*H. D. Thompson* and *W. R. Pierce,* for the appellee.

---

## HICKMAN *v.* GLAZEBROOK.

If a contract is void as to one of the parties to it by reason of his insanity, or incapacity to make a contract on account of mental imbecility, it is also void as to all other parties to it.

APPEAL from the *Putnam* Common Pleas.

*Per Curiam.*—*Glazebrook,* administrator of *Michael Hickman,* deceased, sued *Simon P. Hickman* for the value of land and personal property sold by *Michael,* deceased, in his lifetime to said *Simon.* The defendant answered:

1. The general denial.

2. and 3. That the consideration of the conveyance of the real estate was to be paid by the said *Simon,* viz: the future support of said *Michael Hickman,* deceased, and his wife, during their lives, which support he had furnished.

4. A set-off.

5. Payment.

Hickman v. Glazebrook.

6. Statute of limitations.

The plaintiff replied, denying the payment, set-off, and the bar of the statute of limitations; and further, that *Michael Hickman* was incompetent to agree to receive payment for the land in support, on account of mental imbecility—that he was induced to make the agreement by threats, and that a satisfactory and proper support was not furnished. Trial by jury; verdict and judgment for the plaintiff for 1,800 dollars.

The evidence is of record, and is substantially as follows:

1. A deed for forty acres of land from *Michael Hickman* and *Catharine Hickman,* his wife, to *Simon P. Hickman,* executed on the 11th day of *January,* 1859, and expressed to be for the consideration of 600 dollars.

2. A deed from *Michael Hickman* and *Catharine,* his wife, to *Simon P. Hickman,* for forty acres of land, executed on the 19th of *October,* 1859, and expressed to be for the consideration of 800 dollars.

3. *Catharine Hickman's* deposition. She is the widow of *Michael Hickman,* deceased; is 69 years of age; her husband and witness gave the two pieces of land to *Simon,* and all their personal property, in consideration that he would maintain them the rest of their lives, and he had thus far done so; they conveyed the property to him that he might have a home, as the rest of the children had; he gave a bond to maintain them; can not say when it was signed; it is dated 19 *October,* 1859; it had been in the cupboard in the house they all lived in; she can not read writing; has been sick for a year; nobody forced her to execute the deeds; *Simon* was not to pay any money, but to support herself and husband.

4. *Leonard Bowman,* a brother-in-law of *Simon,* says *Michael Hickman* left at his death personal property worth 915 dollars, which *Simon P.* is in possession of—that the two pieces of land are worth 2,000 dollars.

5. *James Sill* testified to demand of personal property, and *Simon* refused to give it up.

6. *John M. Bowman*, a grandson of *Michael*, testified that *Simon* told him if his father and mother would not trouble or sue him about the property, they should have their share.

7. *William B. Bowman*, another of the grand children, testified that *Simon* said if they lawed him about the property, they should have nothing; if they did not, he would divide with them; one of them stating that he said they might take the personal property belonging to *Michael*, deceased. Some other witnesses also stated that though he said the personal property was his, still he told them they might take it.

8. *A. T. Wright*, a justice of the peace, drew the deed dated 19 *October*, 1859; *Michael*, the grantor, said the consideration was the support of himself and wife for life by *Simon*, and he wanted a bond drawn for *Simon* to sign to that effect. The deed was executed, but the execution of the bond was delayed because he advised a mortgage in its stead, though the bond was drawn up.

9. *Benjamin Nicholson*, a justice of the peace, drew up and acknowledged the deed made in *January*. *Michael Hickman* told him he was giving that land to *Simon* to make him equal with his other children, to whom he had already given bonds, and it was not material what consideration was stated in the deed. The old gentleman was calm and self-possessed when he executed the deed.

10. *Michael Hickman, Jr.* had heard the parties state that they had given *Simon* a tract of land for supporting them, and that he treated them well then—that in the conversation they differed about the ownership of a horse, but that one article of property was all that his father claimed; but his father expected that *Simon* would give certain of his grandchildren something.

11. *Henry Frits, John Braun, Mat Busby*, and *R. L. Braun*,

testified that *Michael*, deceased, had told them that he had given all his property, the last he had, to his son *Simon*, to take care of himself and wife.

12. *George Brunton* testified that *Michael*, deceased, told him that he gave the tract of land deeded in *January*, to *Simon*, to make him equal with his other children, and that the personal property belonged to him, but he did not say on what consideration.

13. *Mr. Baker* testified that the old man, *Michael*, told him that he gave the personal property, as well as the land, to *Simon*, for the support of himself and wife.

14. *Leonard Bowman* recalled; testified that old *Mr. Michael* gave his two oldest boys land worth to each 300 dollars, that is, 40 acres to each, but they had to pay each of their sisters about 96 dollars as their share.

There was contradictory testimony as to the mental capacity of *Michael* and his wife to contract; also, as to the manner in which they were treated by *Simon*; also, that the old lady had said she was forced to execute the deed. There was no evidence as to the value of the support furnished, and care and labor bestowed by *Simon* during the year and a half he maintained the old people, though it is proved that he did maintain them.

This suit, we must recollect, is for the price of land and goods sold, &c., upon a contract express or implied. The recovery affirmed the contract, and holds the purchaser liable to perform it. It affirms, by the jury, the competency of the parties to make the contract. Such being the case, the plaintiff, as well as the defendant, is bound by the terms of the contract, under and by virtue of which, *Simon*, the defendant, holds the property.

We think the evidence shows very clearly that one of the tracts of land was conveyed to him upon a gift contract, to make him equal with his older brothers; and that the other

tract was conveyed to him as the consideration of his supporting *Michael* and his wife during their lives, and the finding, as we have said, affirms the contracts, whatever they may have been, gives *Simon* the land, and continues his liability to support his mother. And it does not appear that this contract, limiting it to the land, was unequal. It appears that the old people were quite helpless, and required much care and attention. The time of the execution of the bond was not material, nor was its execution at all; for it was but evidence of the consideration which would be otherwise proved. The proof as to the personal property, is less satisfactory. No person, so far as appears, heard the contract as to it, and general admissions of the old people are very unsatisfactory evidence; because they might easily be understood as stating contracts when they only state intentions, or understandings without attendant conditions precedent, &c.; while it appears that *Simon* was unwilling to give it up, and that the old people claimed it, or some of it, at times, and that they expected something to be done for grandchildren, and that *Simon* admitted he was going to assist them if he was not sued. The jury might have inferred that the personal property was never really sold or given to *Simon*, and that hence he was liable for its value on an implied assumpsit. This property was worth 915 dollars, and the rise of it might have been worth 150 dollars or so more, making say about 1,100 dollars. Perhaps the jury may have inferred that *Simon* was to give the sisters 100 or 200 dollars, as the other boys had done, and if so, the verdict may be about right. Were the result of the case satisfactory on the evidence, we might affirm the judgment, but it is not. That result is very unsatisfactory, and some of the instructions were erroneous. They informed the jury, in effect, that if the contract was void on account of incapacity to contract, still the defendant might be held liable in this suit to pay for it, while, of course, his title would not be protected by a

judgment in a suit to which the heirs were not parties. The contract was void or valid as an entirety.

*John A. Matson* and *James A. Scott*, for the appellant.

*D. R. Eckles*, for the appellee.

