Bragg and Others *v.* The Board of Commissioners of Rush Co. and Others.

---

BRAGG and Others *v.* THE BOARD OF COMMISSIONERS OF RUSH COUNTY and Others.

SOLDIERS.—*Bounties.*—Under a call of the President for volunteer soldiers, the board of commissioners of a county by an order agreed to pay a certain bounty to each of a certain number of men, or as many as might be necessary to free the county from a draft under said call, providing that the *bona fide* citizens of the county were "to have the preference before outsiders" were paid. And it was provided that said bounty should be paid by the treasurer upon the order of the county auditor, to be issued when the volunteer should have been mustered into the service of the United States; and that the certificate of the mustering-in officer should be sufficient evidence to authorize the auditor to issue the order.

*Held,* that where a person, on the faith of this promise, enlisted, was mustered into the service, and was credited to a certain township of said county, and thereby filled said quota and discharged said county from said draft to the extent of one man, he thereby became entitled to said bounty.

*Held,* also, that said certificate of the mustering-in officer was merely evidence, the presentation of which to the auditor was necessary to authorize him to audit and allow the claim and issue his warrant on the treasurer for the amount thereof, but not necessary to confer the right to the bounty.

*Held,* also, that where the auditor refused to issue said warrant upon presenta-

tion by said volunteer, before said quota had been filled and before all the bounties provided for had been paid to other parties, of a certificate of the mustering-in officer showing the muster in of said volunteer, but not showing that he was accredited to said county, and said commissioners afterwards refused to pay said bounty upon request of said volunteer, he was entitled to recover the amount of said bounty in an action therefor against said board of commissioners, although he did not present to said auditor a certificate of the mustering-in officer in the form required by said order until after said quota had been filled and after all the bounties provided for in said order had been paid to other volunteers.

*Held*, also, that said order should be construed to mean that citizens of said county entitled to bounties under said order should be paid before those, who, residing out of the county, enlisted in accordance with said order; and not that the latter class should never be paid.

JUDICIAL NOTICE.—*Townships.*—The Supreme Court does not judicially know the names of the townships composing a county in this State.

APPEAL from the Union Circuit Court.

DOWNEY, J.—This action was brought by the appellants against the appellees to recover two hundred dollars for each of them, which they allege they were entitled to as bounty for having entered the United States military service at the instance of the county of Rush.

Sundry orders of the board of commissioners of that county are set out in the complaint. On the 10th day of November, 1863, the board ordered that there should be paid out of the county treasury to every man who should volunteer for three years or during the war, in Rush county, and for whom the county should be credited on the call then made, the sum of two hundred dollars.

It was further ordered that said sum of two hundred dollars should be paid by the treasurer upon the order of the county auditor, to be issued when the volunteer should have been mustered into the service of the United States; and the certificate of the mustering-in officer should be sufficient evidence to authorize the auditor to issue the order. The offer of this bounty was to cease when the quota of the county was filled, or at farthest on the 4th day of January, 1864.

On the 26th of December, 1863, it was ordered in addi-

Bragg and Others *v.* The Board of Commissioners of Rush Co. and Others.

tion to, and in explanation of, the former order, that whenever the auditor and treasurer are both satisfied that the person claiming the bounty has been duly enlisted and mustered into the service and credited to the county on her quota under the late call, they might issue the order and pay the bounty under the order of November 10th.

On January 4th, 1864, it was further ordered that a bounty of two hundred dollars be paid out of the county treasury for all the men who may be credited on the quota of said county under the present call for three hundred thousand, in the following manner:

Each township might furnish its own men and draw its portion of county bounty in proportion to the number of men furnished by it under the call, at the rate of two hundred dollars for each man that it shall be obliged to furnish under the draft, the amount to be drawn by the agent of the township on presenting to the county auditor the certificate of the mustering officer showing that the soldier has been mustered in and credited to the township. But any volunteer might draw the money himself on presenting the proper certificate accompanied by an order from the township agent directing the auditor to pay it and charge it to the township.

The above bounty to be paid to the volunteer himself, or to the family of the man who might be drafted and should go into the service, or to the principal who should put in a substitute, on presenting the proper certificate as above.

And in February, 1864, the board made this order: "The board agree to pay to one hundred and fifty-five men, or so many as may be necessary to clear the county from a draft under the late call, the sum of two hundred dollars each. Said bounty to be paid to veterans who re-enlisted and are credited to the county, and also to those who enlisted under the former call for three hundred thousand and have not received their bounty. And it is expressly ordered that *bona fide* citizens of the county are to have the preference before *outsiders* are paid. And said bounty is to be paid under the same rules and regulations under which the former bounty

was paid, and the orders made at that time are made a part of this order."·

The plaintiffs then allege that in order to reduce said quota of one hundred and fifty-five men, and discharge the citizens of the county from the said impending draft, the plaintiffs and each of them consented and agreed at the request of the defendants to volunteer into the service of the United States and to be credited to the township of Rush in said county, to fill said quota, and that the plaintiffs and each of them were credited to said township, and thereby filled the quota and discharged said county of Rush from said draft to the number of four men, in consideration that each of the plaintiffs was to have the sum of two hundred dollars appropriated by the said board.

They further allege that immediately after being mustered into the service each procured a certificate from the acting assistant provost marshal general, copies of which are made part of the complaint, and on the 28th day of February, 1864, presented the same to the auditor of said county, and requested him to issue the orders on the treasurer for the bounty, but the auditor refused to issue the orders, and the board of commissioners and the other defendants named have wholly failed and refused, and although the defendants have since the demand on the auditor been frequently requested by the plaintiffs to pay said bounties, they and each of them have wholly failed to do so, to the damage of the plaintiffs one thousand dollars, &c.

There was a demurrer to the complaint which was overruled, and the defendants then waived all objections to the complaint on account of misjoinder of parties plaintiffs and defendants.

The defendants answered, first, by a general denial; and secondly, that at the time the plaintiffs presented their certificates to the auditor, that they had been mustered into the service and credited to the county as required by the board of commissioners, the quota of the county had been filled, and the order for the payment of the volunteers as provided

by the order of said board had been issued and paid by the county.

There was a demurrer to this second paragraph of the answer, which was overruled, and an exception entered.

The plaintiffs replied to this paragraph of the answer, first, by a general denial; and second, that they did, before the quota of the county was full, present to the auditor a certificate that they had been duly mustered into the service, and so informed said auditor; but that the certificates were not in the form required by the orders made by the commissioners; that they afterwards procured the certificates required in said orders, and presented them to the auditor and demanded payment of the bounty; and therefore they say that the auditor had actual notice that they had enlisted and were credited to the county before the quota had been filled, and before the bounties had all been paid to other parties.

There was a demurrer by the defendants to the second paragraph of the reply, which was sustained, and the point reserved.

The cause was then tried by the court, on an agreed statement of the facts, and there was a finding for the defendants, and, notwithstanding a motion for a new trial, judgment was rendered in accordance with the finding.

The certificates filed with the complaint do not show that the plaintiffs were credited to Rush county. They are all in the same form, and read thus:

"STATE OF INDIANA,

"*Head Quarters Superintendent Recruiting Service,*

"INDIANAPOLIS, Feb. 27th, 1864.

"This is to certify that John W. Bragg, a recruit for the 90th Reg. Ind. Vols., was enlisted on the 26th day of February, 1864, and duly mustered into the service of the United States on the 27th day of February, 1864, and that, according to the description book of recruits, his residence at the time of his enlistment was Rush township, Rush county, Indiana.          "By order of COL. CONRAD BAKER,

"A. A. P. M. G. and Supt. Vol. Rect. Ind."

Were it not for the statement in the complaint, "that the plaintiffs and each of them were credited to said township and thereby filled the quota and discharged said county of Rush from said draft to the number of four men, in consideration that each of the plaintiffs was to have the sum of two hundred dollars appropriated by the said board," we should be compelled to hold the complaint bad. But, after some hesitation, we have concluded that on account of this allegation it may be good, notwithstanding the failure of the certificate to show that the plaintiffs were credited to the county. We must regard the allegation, that they were credited to Rush township, Rush county, Indiana, as a sufficient allegation that they were credited to the county.

We cannot know, judicially, if such is the fact, that there is no such township as Rush, in Rush county. The townships are formed by the board of commissioners, and are not created, bounded, and named by the legislature, as counties are.

The overruling of the demurrer of the plaintiffs to the second paragraph of the answer is assigned for error.

In support of the ruling of the court, the counsel for the appellee insists that to entitle the appellants to the bounty, it was not only necessary for them to present the certificate mentioned in the orders of the commissioners, but that they must have presented it before the quota of the county had been filled.

We do not regard the presentation of a certificate to the auditor as a condition precedent, the performance of which was necessary to confer the right to the bounty.

By the order of February, 1864, the commissioners said, we "agree to pay to one hundred and fifty-five men, or so many as may be necesssry to clear the county from a draft, under the late call, the sum of two hundred dollars each."

If the plaintiffs, on the faith of this promise, enlisted, were mustered into the service, and credited to the township, and as they allege, thereby filled said quota, and discharged said county from said draft to the number of four men, we think

Bragg and Others *v.* The Board of Commissioners of Rush Co. and Others.

they had done all that was required of them to give them a valid claim against the county for the promised reward.

The production of the certificate was necessary to authorize the auditor to audit and allow the claim and draw his warrant for the amount on the treasurer. The provision in the order of the board allowing the auditor to allow the claim and draw his warrant for it on presentation to him of certain evidence, was a provision which may have been adopted for the convenience of the board, and to save them the trouble of having to pass on and allow the claims themselves. It could make little difference to the claimants whether they got their money in the one way or the other.

A point is made with reference to that part of the order of February, 1864, which says, "and it is expressly ordered that the *bona fide* citizens of the county are to have the preference before outsiders are paid." But we cannot see how this preference of the citizens, until they shall have been paid, can be construed to mean that the other class shall never be paid. We must construe it to mean that the citizens, who were to contribute the means, by the payment of taxes, to pay the bounties, should be paid before those who might enlist and yet not reside in the county.

What we have said shows that the demurrer to the second paragraph of the reply should have been overruled.

We doubt whether the assignments of error, with reference to the facts of the case, are such as to justify or require us to examine them, and we think it not necessary that we should do so.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the second paragraph of the answer, and to grant the parties leave, if they desire to do so, to reconstruct the issues.

*J. Stafford* and *D. Moss*, for appellants.

*L. & W. O. Sexton* and *B. F. Claypool*, for appellees.