No. 1,683.

## COLUMBIAN OIL COMPANY v. BLAKE.

SPECIFIC PERFORMANCE.—*Real Estate.*—*Contract of Sale.*—*Married Woman.*—The assignee of a contract for the conveyance of an interest in the separate real estate of a married woman, which is invalid under R. S. 1894, sections 6961, 6962, because her husband did not join therein, may plead her coverture as a defense to an action by her to enforce the contract.

CONVEYANCE.—*Mines and Mining.*—*Natural Gas and Oil.*—*Contract.*—An instrument conveying all the oil and gas under 40 acres of land, with the right to enter and drill and operate for oil or gas, and maintain all structures and lay all pipes necessary for its production and transportation, and leasing one acre for a test well, with a provision that the lessee shall commence operations within thirty days, and complete a well in thirty days after drilling is commenced, and if he fails to do so, shall pay annually, a specified price "per acre" until the well is completed, requires the payment of such price for the entire 40 acres, instead of one acre only in case of failure to make a test.

SAME.—*Married Woman.*—*Natural Gas and Oil.*--*Statute Construed.*—*Real Estate.*—An instrument executed by a married woman alone, conveying all the oil and gas under her separate estate, with the right to erect and maintain thereon all buildings and structures, and lay all pipes necessary for the production and transportation of oil and gas taken therefrom, is within R. S. 1894, sections 6961, 6962, pro-

Columbian Oil Company *v.* Blake.

hibiting a married woman from encumbering or conveying in any manner her separate real estate, except by deed in which her husband joins with her.

DEED.—*Description Only by Section, Civil Township, County and State.*—A description of the land conveyed in a deed as a specified portion of a designated section, civil township, county and state, is sufficient, although the congressional township and range are not given.

From the Blackford Circuit Court.

*G. A. Mason* and *A. Simmons*, for appellant.

*J. A. Bonham, E. Cole, D. H. Fouts* and *A. M. Waltz*, for appellee.

Ross, J.—This was an action brought by the appellee against the appellant to recover rents alleged to be due her under the terms of a written contract.

The first and second specifications of error in the assignment of errors in this court, call in question the sufficiency of the complaint. The contract sued on, it is insisted by counsel for appellee, is void for the following reasons: First, "For the reason that no particular real estate is described therein." Second, "Because it does not designate any time within which *drilling* shall be commenced, and consequently, when renting shall accrue, nor when it shall mature." Third, "Because it does not provide upon what terms the 39 acres should be operated, in case oil or gas was found on the one acre."

We think counsel's objections untenable. The property leased is described as being the south-east quarter of the south-east quarter of section twenty-three, and as being situated in the civil township of Harrison, in Blackford county, Indiana. The congressional township and range are not given.

In *Mossman* v. *Forrest*, 27 Ind. 233, the supreme court held that the courts take judicial notice of the geography of the country, and in the cases of *Board*

*of Commissioners of Shelby Co.* v. *Castetter*, 7 Ind. App. 309; *Hays* v. *State*, 8 Ind. 425, and *Peck* v. *Sims*, 120 Ind. 345, it is said that the courts take judicial notice of the geography and topography of the State and the United States. In *Cash* v. *Auditor of Clark County*, 7 Ind. 227, the court says : It knows "geographically that the falls of the Ohio are local and in Clark county." In *Carr* v. *McCampbell*, 61 Ind. 97, it is held that it is judicially known as a part of the history of the State, that "Clarke's Grant" is located in Clark, Floyd, and Scott counties in this State, "and that the town of Clarksville was located and laid out in the two counties of Clark and Floyd, and abutting on the Ohio river." In a number of other cases it has been decided that our courts take judicial notice of the location of the cities and towns, and in what counties they are situated. *Cluck* v. *State*, 40 Ind. 263; *Turbeville* v. *State*, 42 Ind. 490, and *Indianapolis, etc., R. W. Co.* v. *Lyon*, 48 Ind. 119; *Steinmetz* v. *Versailles and Osgood Turnpike Co.*, 57 Ind. 457 ; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496; *Louisville, etc., R. W. Co.* v. *Hixon*, 101 Ind. 337. But in *Grusenmeyer* v. *City of Logansport*, 76 Ind. 549, the court says : That while the courts "take judicial notice of the existence and names of cities and towns, and in some general sense, of their locations," it does not judicially know their exact limits or boundaries. In *Moberry* v. *City of Jeffersonville*, 38 Ind. 198, it is held that the courts do not know judicially the number of wards into which a city is divided, and in the case of *Bragg* v. *Board of Commissioners of Rush Co.*, 34 Ind. 405, the court says : "We cannot know judicially, if such is the fact, that there is no such township as Rush, in Rush county."

When lands are described as being within the State

of Indiana, and the section, township and range are given, their location is a matter of certainty and fixed, for all the lands of the State were surveyed by the general government, upon a system of base and meridian lines, and no two sections can be found having the same number, and lying within the same congressional township and range. As stated heretofore, the description in the lease or contract before us, does not give any description of the property in any manner locating it with reference to a congressional township or range. This court, however, knows judicially that there is a county in the State of Indiana, called and known as Blackford county, and according to the great weight of the adjudications in this State, we know the names and general locations of the towns situated therein; that the county of Blackford is divided into four townships, the names of which are Washington, Harrison, Jackson and Licking, is a part of the history of the county itself, and is so well known that the courts must take judicial notice thereof, and we think the court must also know that there is but one section number twenty-three in the township of Harrison, in said county of Blackford. The description of the property is sufficient.

It is contended by counsel for appellant that the contract grants to appellant the right to enter and drill for gas or oil upon but one acre of the forty described, while counsel for appellee insist that the right is granted as to the entire forty acres, and that appellant's right to drill and the amount of land for which it agreed to pay a yearly rental was not limited to one acre. The contract entered into between the parties reads as follows:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, Effie Blake, of Hartford City, Indiana, of the first part, hereby grants

unto Lyman C. Scott, second party, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil or gas, and to erect and maintain all buildings and structures, and lay all pipes necessary for the production and transportation of oil or gas taken from said premises.

"Excepting and reserving, however, to the first party, one-eighth part of all oil produced and saved from said premises, to be delivered in the pipe line with which second party may connect his wells, namely:

"All that certain lot of land situated in the township of Harrison, county of Blackford, in the State of Indiana, bounded and described as follows, to-wit:

"S. E. ¼ of the S. E. ¼ of section 23; party of first part leases one acre anywhere out of this above described land for a test well, and if oil or gas is found, then party of second part has the balance of this above land to drill at the same royalty as the within lease, containing—— acres, more or less.

"To have and to hold the above premises on the following conditions:

"If gas only is found in quantities large enough to transport, then party of the first part is to receive one hundred dollars for the product of each and every well so transported, and also free gas for dwelling on the above described land, for heating and lighting purposes, also for domestic purposes.

"Whenever first party shall request it, second party shall bury all oil and gas lines, and pay all damages done to growing crops, by reason of burying and removing said pipe lines.

"The second party shall have the right to use sufficient gas, oil or water, to run all machinery for operat-

ing said wells, and also the right to remove all its prop-
erty at any time.

"Party of second part agrees to commence operation
within thirty days, and to complete a well in thirty days
after drilling is commenced, and if failing therein, then
party of second part is to pay annually thereafter five
dollars per acre until said well is completed, and if fail-
ing therein, then this contract is to become null and
void.

"It is understood between the parties to this agree-
ment, that all conditions between the parties hereunto
shall extend to their heirs, successors, executors and
assigns.

"In witness whereof, the parties hereto have hereunto
set their hands and seals, this 3d day of May, 1893."

The right granted is absolute to take all the oil and
gas in and under the entire forty acres described, unless
that right is limited by the words, which immediately
follow the description of the property, viz:  "Party of
first part leases one acre anywhere out of the above de-
scribed land for a test well, and if oil or gas is found,
then party of second part has the balance of this above
land to drill at the same royalty as the within lease."

It is insisted by counsel for appellee, that if it is held
that the original grant is limited by the clause last
quoted, then no effect can be given to other parts of the
contract, especially that wherein it provides that the
"Party of second part agrees to commence operation
within thirty days, and to complete a well in thirty days
after drilling is commenced, and if failing therein, then
party of second part is to pay annually thereafter five
dollars per acre until said well is completed, and if fail-
ing therein, then this contract is to become null and
void."  And that courts will not presume that parties
in entering into contracts have inserted therein pro-

visions which are meaningless, but, on the contrary, will give to such contracts, if possible, such a construction as will give force and effect to each and every part thereof.

We think the rule is settled as elementary, that if a contract is susceptible of two constructions, that one must be adopted which will give force and effect to each and every provision contained therein, and not the one which will give force to but a part of the provisions, thus discarding and giving no effect to others. A contract must be considered and construed as an entirety, and for that reason the law assumes that nothing has been inserted therein, except what is a part of the agreement entered into. As said by this court in *Learned v. McCoy*, 4 Ind. App. 238: "In the interpretation of a contract the real intention of the parties should be the aim, and the instrument should be construed as a harmonious whole, and in such a manner as to give effect to every provision when this can be done. Courts will not presume that parties intended to use any meaningless provisions, unless compelled to."

We think the intention of the parties, as expressed by the contract before us, was that appellant should have the right to take all of the gas or oil in or under the entire forty acres, if gas or oil in paying quantities was found in or under the same; that appellant could select any one acre out of the forty upon which to drill a test well for the purpose of ascertaining whether or not gas or oil was to be found there in paying quantities; that the drilling of this test well was to be commenced within thirty days from the date of the making of the contract, and to be completed within thirty days after the drilling commenced, but that if appellant failed to commence drilling within the time agreed for, or failed to complete the well within the thirty days after drilling was com-

menced, then it should pay appellee "annually thereafter five dollars per acre, until said well is completed." The right granted to take the oil and gas is not limited but covers the entire forty acres, while the right to make a test by drilling is limited to but one, and the right to lay pipes, erect and maintain buildings and structures necessary for the transportation of gas and oil covers the entire grant.   This seems to be but a fair interpretation of the contract and the only one which can give force and effect to each and every provision thereof.   It cannot well be contended that appellant was not granted the right to take all of the gas or oil which it might find in or under the entire forty acres, or that appellee was not bound to permit appellant to take it.   If she was bound by the terms of the contract to permit appellant to take the oil or gas which might be found in or under the entire forty acres, then appellant was also bound to pay for that right in the manner provided by the contract.   The clause of the contract which provides that appellant shall pay annually five dollars per acre was apparently made to meet the exigencies of a case just such as this, where the lessor has granted the right to take gas or oil, if found, but the lessee has failed to make a test.   Appellee could not have granted the right to others to take the gas or oil from her land, because she had already granted it to appellant, and appellant's failure to make the test was not the fault of appellee, but its own, and under the terms of the contract, if it failed to make the test, it agreed to pay her at the rate of five dollars per acre annually, not for the one acre upon which the test was to be made, but for the forty acres from which the right to take gas and oil was granted.

By the second and third paragraphs of its answer, appellant sought to relieve itself from liability under the

terms of the contract sued on, upon the assumption that the contract was void, because appellee, at the time of the execution thereof, was a married woman, and her husband did not join with her in its execution.

The statute, sections 5116 and 5117, R. S. 1881 (sections 6961 and 6962, Burns Rev. 1894), provides that a married woman shall have no power to encumber or convey her real estate, except by deed in which her husband shall join with her. And by the latter section it is provided that "all the rents, issues, income and profits" of her real estate "shall be and remain her own separate property, and under her control, the same as if she were unmarried."

The natural gas and oil, after they are brought to the surface from their natural reservoirs under the soil, are personal property, we think, clear; but whether it is to be considered as a part of the real estate while in the earth is the question presented by these answers; for if it is a part thereof appellee could not, without her husband joining, make a valid contract which would take away or diminish the value of the real estate itself. That growing timber, stone before quarried, and coal, lead and iron, before mined, are a part of the realty itself, is so well settled that we deem it unnecessary at this time to cite authorities. Oil and gas are natural products, and their source is in the soil or rocks of the earth. True, they are like water, liquid in their nature, and they are also like water, mineral. It is said that water, oil and gas should be classed by themselves, and are termed minerals *feræ naturæ*.

In *Westmoreland, etc., Gas Co.* v. *De Witt*, 130 Pa. St. 235 (249), it is said: "Gas, it is true, is a mineral, but it is a mineral with peculiar attributes, which require the application of precedents arising out of ordinary mineral rights, with much more careful consideration

Columbian Oil Company *v*. Blake.

of the principles involved than of the mere decisions. Water, also, is a mineral; but the decisions in ordinary cases of mining rights, etc., have been held as unqualified precedents in regard to flowing, or even to percolating waters. Water and oil, and, still more strongly, gas, may be classed by themselves, if the analogy be not too fanciful, as minerals *feræ naturæ*. In common with minerals, and unlike other minerals, they have the power and the tendency to escape without the volition of the owner. 'Their fugitive and wandering existence within the limits of a particular tract is uncertain,' as said by Chief Justice Agnew in *Brown* v. *Vandergrift*, 80 Pa. St. 142, 148.''

The adjudications seem to be that on account of the fugitive and wandering existence of gas, oil and water in the earth they are not subject to absolute ownership; that they belong to the owner of the land and form a part of the land itself so long as they are in or on the land, but when they escape and go into or upon other land his title thereto is lost.

In *Westmoreland, etc., Gas Co.* v. *De Witt, supra,* the court says: "They belong to the owner of land, and are a part of it, so long as they are on or in it, and are subject to his control, but when they escape, and go into other land, or come under another's control, the title of the former owner is gone. Possession of the land, therefore, is not necessarily possession of the gas. If an adjoining, or even a distant, owner, drills his own land, and taps your gas, so that it comes into his well and under his control, it is no longer yours, but his."

While oil and gas remain in the earth within their natural reservoirs or pockets they are parts of the realty itself as much as are stone, coal, lead or iron or any other solid or substantive mineral, and the sale of the real estate carries with it the ownership to all that lies

beneath the soil, which, in case it be stone, coal, lead or iron, vests in the purchaser the absolute ownership therein, while if there is water, oil or gas in or on the land the purchaser's ownership therein is absolute so long as it remains in or on his land, but when it escapes therefrom it is lost.

In this view of the case, if appellee could sell the gas or oil which might be found in or under her real estate without her husband joining with her, she could also sell the stone, coal, lead and iron which might be found there, or even the soil itself, thus, if not parting with, in fact destroying, the real estate itself.

But if we were to hold that the gas and oil found beneath the soil is not a part of the land itself the result in this case must be the same, for under the terms of this contract the appellant had the right to go upon the premises not only to sink gas and oil wells, but also to erect and maintain thereon "all buildings and structures and lay all pipes necessary for the production and transportation of oil or gas taken from said premises." These rights are of necessity exclusive in their nature and would vest in the appellant rights in the property or real estate itself, and, if valid, might be enforced to the exclusion of the appellee. The statute, sections 5116 and 5117, *supra*, specially withholds from married women the right to in any manner encumber or convey away their separate real estate except their husbands join with them.

Counsel for appellee insist, however, that the defense of coverture set up in the answer is a personal defense of which the appellee alone could take advantage, and that she does not seek to invoke it here, hence it is waived and cannot be pleaded by appellant as against her. In support of this proposition our attention is called to

*Bennett* v. *Mattingly*, 110 Ind. 197; *Johnson* v. *Jouchert*, 124 Ind. 105, and *Plaut* v. *Storey*, 131 Ind. 46.

It may be assumed as true, for the purposes of this case, that if appellee, her husband joining, had conveyed away the above real estate, after the execution and recording of the contract sued on, then her grantee could not plead the coverture of appellee as a defense to an action brought by appellant to enforce its rights under such contract, but the question here is whether or not appellant can plead the coverture of appellee as a defense to an action brought by her to enforce a contract to which appellant is a party by assignment from the party who contracted with appellee.

We think it is clear that if appellee had made to appellant a deed of conveyance for her land, her husband not joining, in consideration whereof appellant had promised to pay her the sum of two thousand dollars, in an action brought by her to recover the purchase price appellant could plead want of consideration, resulting from appellee's coverture and inability to execute a conveyance conveying to him a title. If that be true, then the same defense would be proper in this action.

If the contract sued on could not be enforced against appellee on account of her incapacity to execute it, she cannot over a plea of incapacity have an enforcement in her favor.

A contract which is void as to one of the parties executing it is also void as to the other, hence it cannot be enforced in favor of one unless it can be enforced in favor of the other. *Hickman* v. *Glazebrook*, 18 Ind. 210.

The second and third paragraphs of answer were sufficient, and the court erred in sustaining the demurrers thereto.

Judgment reversed, with instructions to overrule the

demurrers to the second and third paragraphs of the answer, and for further proceedings not inconsistent with this opinion.

LOTZ, J., concurs in result.

Filed November 26, 1895.